# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**LEON JOHN WILLIAMS**

**VERSUS**

**CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY**

**CIVIL ACTION**

**NUMBER 14-629-BAJ-EWD**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 4, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEON JOHN WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 14-629-BAJ-EWD** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY** | |

## MAGISTRATE JUDGE'S REPORT

Plaintiff Leon John Williams ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits.

Based on the applicable standard of review under § 405(g) and the analysis which follows, the Commissioner's decision should be affirmed.

### I.     Procedural History

Plaintiff filed applications for disability insurance and SSI benefits on August 21, 2013. (AR pp. 120-123 & 124-129).[1] Therein, Plaintiff alleged that as of September 1, 2010,[2] he was

---

[1] References to documents filed in this case are designated by "(Rec. Doc. [docket entry number(s)] at [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR [page number(s)]."

[2] Plaintiff amended his alleged onset date to December 1, 2010 at the hearing. (AR p. 32). While Plaintiff notes that the ALJ's decision "makes no mention of the plaintiff's request at hearing that the AOD be amended to December 1, 2010" (Rec. Doc. 8, p. 2), Plaintiff has not raised an issue with the ALJ and the Appeals Council's use or discussion of the original alleged onset date of September 1, 2010. Regardless, any error for failing to recognize the amended onset date is harmless because the analyses include the amended date. Under the harmless error rule, a judgment will not be vacated unless the substantial rights of a party have been affected. Procedural improprieties constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988)*; Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

1

disabled and no longer able to work because of liver cancer (stage 2), diabetes, and hepatitis B and C. (AR pp. 139-149).³ Plaintiff last met the insured status requirements of The Social Security Act on December 31, 2010. (AR p. 135).

Plaintiff's claim was initially denied and Plaintiff filed a request for hearing. A hearing was held on March 17, 2014, at which Plaintiff, represented by counsel, appeared and testified. (AR pp. 29-44). A medical expert, Dr. George Robert Smith, also appeared and testified. (AR pp. 29-44). A partially favorable decision was rendered by the ALJ on March 21, 2014. (AR pp. 16-24).⁴

Plaintiff requested review by the Appeals Council. Plaintiff was represented by counsel in his request for review. The Appeals Council granted the request for review and issued a partially favorable decision on August 7, 2014 adopting the Administrative Law Judge's Decision, except the date of disability onset, which the reviewing Administrative Appeals Judge found to be November 25, 2013.⁵ (AR pp. 5-8). Accordingly, Plaintiff exhausted his administrative remedies before filing this action for judicial review and the Appeals Council's decision is the Commissioner's final decision for purposes of judicial review. *Sims v. Apfel*, 530 U.S. 103, 106-107 (2000) (explaining that "if the Appeals Council grants review of a claim, then the decision

---

3 Plaintiff was 55 years old at the time of the administrative law judge's ("ALJ") decision. Plaintiff has a high school education, and had been previously employed in the field of construction as a cement finisher for 15 years prior to his alleged onset disability date. (AR pp. 38-39, 145).

4 As discussed more fully below, the ALJ found Plaintiff disabled as of March 11, 2014. Because this date of disability was after the date last insured, Plaintiff's application for social security insurance benefits was denied. Plaintiff's application for supplemental security income benefits ("SSI") was left for further determination (regarding the amount and months for payment). (AR p. 24).

⁵ At the time of the alleged onset date, the Plaintiff's age placed him in the category of "person closely approaching advanced age." 20 C.F.R. §§ 404.1563(d); 416.963(d). On November 25, 2013, the Plaintiff turned 55, which placed him in the category of "person of advanced age" 20 C.F.R. §§ 404.1563(e); 416.963(e).

2

that the Council issues is the Commissioner's final decision.").

## II.     Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914

3

F.2d 614, 617 (5th Cir. 1990). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### III. ALJ's and Appeals Council's Determinations

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In the five-step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). If the claimant shows at step four that he is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, 238 F. 3d at 619. If the Commissioner meets this burden the claimant must then show that he cannot

4

in fact perform that work. *Boyd*, 239 F.3d at 705.

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability date. (AR p. 18). At the second step, the ALJ found that the Plaintiff's diabetes mellitus, chronic liver disease (Hepatitis B and Hepatitis C), cardiac disease and obesity[6] were severe impairments. (AR pp. 18-19).[7] At the third step, the ALJ concluded that the Plaintiff's combination of impairments did not meet or medically equal the severity of any listed impairment. (AR p. 19).[8]

The ALJ then evaluated Plaintiff's residual functional capacity ("RFC") to determine whether, despite his severe impairments, he was able to do any of his past relevant work or other work in the national economy.[9] The ALJ found that prior to March 11, 2014 Plaintiff had the ability to perform a full range of light work,[10] but that after that date, Plaintiff had the RFC to

---

[6] In June 2011 the Plaintiff weighed 238 pounds. Plaintiff's height is approximately 72 inches. From these factors, the ALJ calculated Plaintiff's body mass index to be approximately 32.3. Under the Clinical Guideline, a BMI of 30 or above is categorized as "obesity." Although Plaintiff did not allege obesity as an impairment, the ALJ's decision reflects that she properly considered the effects of Plaintiff's obesity impairment in accordance with the applicable law and regulations. (AR p. 19). *See*, Listing 1.00.Q.; Listing 3.00.I.; Listing 4.00.F; SSR 02-01p, Evaluation of Obesity, 2000 WL 628049 (S.S.A. Sept. 12, 2002); *Weary v. Astrue*, 288 Fed.Appx. 961 (5th Cir. 2008).

[7] The ALJ noted that Plaintiff's June 29, 2011 medical examination reflected Plaintiff was diagnosed with arthritis. However, based on June 2011 exam notes showing normal range of motion; no joint tenderness, swelling, redness, or warmth; normal grip, grasp and dexterity; normal reaching, pulling, and pushing; normal stooping, squatting, and heel-to-toe walk; normal gait and station; no need for an assistance device for ambulation; and no neurological, motor, or sensory deficits in Plaintiff's upper or lower extremities, the ALJ found Plaintiff's arthritis to be a non-severe impairment. (AR p. 19). Plaintiff did not contest this finding in his appeal.

[8] Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. §§ 404.1525; 416.925. In his appeal, Plaintiff has not asserted any error at step three.

[9] Residual functional capacity is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. It is the foundation of the findings at steps four and five. 20 C.F.R. §§ 404.1545; 416.945.

[10] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg

perform sedentary work[11] with limitations. (AR pp. 19-21 & 21-22).[12] With regard to sedentary work after March 11, 2014, the ALJ found that Plaintiff could stand and/or walk 1 hour and sit 1 hour, total in an 8 hour workday. (AR pp. 21-22). He was limited to lifting/carrying no more than 10 pounds, occasionally, never stooping and he required the option to elevate both extremities periodically, throughout the workday. (AR pp. 21-22). Plaintiff also was limited to no more than occasionally fingering or performing gross manipulations, bilaterally. (AR pp. 21-22).

Given this RFC and based on the Plaintiff's testimony, the ALJ concluded that Plaintiff would not be able to perform his past relevant work in construction which was classified as "heavy, exertional." (AR pp. 22, 38-39). Proceeding to the fifth step, the ALJ relied on the Medical-Vocational Guidelines (20 CFR Part 404, Subpart P, Appendix 2) to make her disability finding.[13]

---

controls." 20 C.F.R. §§ 404.1567(b); 416.967(b). "'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251. See also, SSR96-9P, 1996 WL 374185 ("If an individual is able to stand and walk for approximately 6 hours in an 8-hour workday (and meets the other requirements for light work), there may be a significant number of light jobs in the national economy that he or she can do even if there are not a significant number of sedentary jobs.").

11 "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out job duties." 20 C.F.R. §§ 404.1567(a); 416.967(a). "'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday." SSR 96-9p, 1996 WL 374185.

12 March 11, 2014 is the date on which Dr. David Gboloo, apparently a colleague of Plaintiff's treating physician, Dr. Yaw Twum, completed an evaluation of Plaintiff's ability to function. (AR pp. 657-659). In that evaluation, Dr. Gboloo selected that Plaintiff could stand and/or walk for a total of one hour in the course of an eight hour workday, could sit for a total of one hour in the course of an eight hour workday, could lift/carry less than ten pounds on an occasional basis, was unable to stoop, could occasionally perform fingering type and gross manipulative movements of his right and left upper extremities, and was not able to perform full-time work activity (be it sedentary, light, or otherwise) on a sustained basis. (AR pp. 657-659). The specific limitations the ALJ placed on Plaintiff's RFC to perform sedentary work after March 11, 2014 mirror those set forth in Dr. Gboloo's evaluation.

13 When a claimant suffers from only exertional impairments, or his nonexertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Medical-Vocational Guidelines in determining whether there is other work available in the national economy that the claimant can perform. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Covington v. Colvin*, 2014 WL 971985, n.12 (M.D. La. 3/12/14). Plaintiff notes that while the procedural history of the ALJ's opinion references testimony by "an impartial vocational

6

Based on Plaintiff's age, education, work experience and her finding the Plaintiff could perform a full range of light work, the ALJ relied on Medical-Vocational Rule 202.14 to support the conclusion that prior to March 11, 2014, the Plaintiff was not disabled. (AR p. 23). However, beginning on March 11, 2014 considering the Plaintiff's age, education, work experience and his RFC for sedentary work, the Plaintiff was found disabled under Medical-Vocational Rule 201.06. (AR p. 23).

As noted above, the Appeals Council reviewed the ALJ's decision and issued a partially favorable decision on August 7, 2014. (AR pp. 5-8). In its decision, the Appeals Council adopted the ALJ's statements regarding the pertinent provisions of the Social Security Act, Regulations, and Rulings; the issues in the case; the evidentiary facts, "including the evaluation of the medical source statements by George R. Smith, M.D., the medical expert who testified at the hearing, and by David Gboloo, M.D," and the ALJ's conclusions regarding the Plaintiff's subjective complaints. (AR pp. 5 & 6). The Appeals Council also adopted the ALJ's determination that Plaintiff had the RFC for light work. (AR p. 6). However, the Appeals Council did not adopt the ALJ's use of March 11, 2014 in determining the date of Plaintiff's disability. (AR pp. 5-8). Instead, the Appeals Council found Plaintiff disabled as of November 25, 2013, the date claimant turned 55 years old. (AR p. 5). The Appeals Council concluded that as of that date, Plaintiff changed age categories from "closely approaching advanced age" to "advanced age." Based on his age category and the Plaintiff's RFC and vocational factors, Medical-Vocational Rule 202.06 directed a finding of disability starting on November 25, 2013.

---

expert," in fact there was no testimony from a vocational expert at the hearing. (R. Doc. 8, n.1) Although Plaintiff is factually correct, because the ALJ's opinion goes on to analyze plaintiff's claim under Medical-Vocational Rule 201.06, the court does not find error with the misstatement contained in the procedural history of the opinion.

7

(AR pp. 6-7).[14]

## IV. Plaintiff's Allegations of Error

Plaintiff alleges that the RFC findings of the ALJ and Appeals Council are contrary to the substantial medical evidence of record and testimony.[15]

## V. Analysis

### a. The Commissioner's Determination That Plaintiff Can Perform Light Work

Plaintiff argues that the RFC findings of the ALJ and Appeals Council are contrary to the medical evidence of record and testimony. Specifically, Plaintiff asserts that medical records and testimony establish his inability to perform "in any more than work at a sedentary exertional level" from his alleged disability onset date of September 1, 2010. (Rec. Doc. 8, p. 7).

In making the determination that Plaintiff had the ability to perform the full range of light work prior to March 11, 2014, the ALJ assigned "some weight" to the testimony of Dr. Smith (the medical expert who reviewed Plaintiff's medical records and testified at the hearing), "great

---

14 The Medical-Vocational Rules set forth in 20 CFR Part 404, Subpart P, Appendix 2, Table 2 (Rules 202.01-201.22) apply when a claimant's RFC is limited to <u>light</u> work. A claimant "closely approaching advanced age" (i.e., 50-54 years old) who is a high school graduate with non-transferable skilled or semi-skilled work experience and an RFC to perform light work <u>is not</u> considered disabled. Rule 202.14. Conversely, a claimant of "advanced age" (i.e. 55) who is a high school graduate with non-transferable skilled or semi-skilled work experience and an RFC to perform light work <u>is</u> considered disabled. Rule 202.06. The Medical-Vocational Rules set forth in 20 CFR Part 404, Subpart P, Appendix 2, Table 1 (Rules 201.01-201.29) apply when a claimant's RFC is limited to <u>sedentary</u> work. A claimant "closely approaching advanced age" who is a high school graduate with non-transferable skilled or semi-skilled work experience and an RFC to perform sedentary work <u>is</u> considered disabled. Rule 201.14. Likewise, a claimant "closely approaching advanced age" who is a high school graduate with non-transferable skilled or semi-skilled work experience and an RFC to perform sedentary work <u>is</u> considered disabled. Rule 201.06. As noted above, the ALJ found that beginning March 11, 2014, Plaintiff had an RFC to perform sedentary work with limitations. (AR pp. 21-22). Given that RFC, the ALJ concluded that even without the determined limitations, Plaintiff would be considered disabled under Medical-Vocational Rule 201.06. (AR p. 23).

15 Plaintiff asserts that "[n]either the ALJ nor the reviewing AC have sufficiently supported the decision to reject the claimant's testimony and credibility as to his symptoms and limitations, nor have they sufficiently supported the decision to reject the treating source opinion evidence as a whole." (Rec. Doc. 8, pp. 12-13). Plaintiff provides no elaboration regarding the ALJ/Appeals Council's credibility determinations. However, the court will consider whether substantial evidence supports same.

8

weight" to the Disability Determination Services' medical consultant's assessment which indicated Plaintiff retained the capacity for light work, and "some weight" to the consultative medical examination of Dr. Johnson. (AR p. 21).[16] Based on a medical source statement signed by Dr. Gboloo, the ALJ found that beginning March 11, 2014, Plaintiff had the RFC to perform sedentary work with limitations as set forth in Dr. Gboloo's evaluation. (AR pp. 21-22). The ALJ assigned Dr. Gboloo's evaluation "great weight" as of March 11, 2014. (AR p. 22). However, the ALJ assigned "less weight" to Dr. Gboloo's statement that the limitations set forth in the evaluation were present as of December 31, 2010 (i.e., the date last insured) based on Dr. Johnson's June 2011 assessment and the testimony of Dr. Smith.[17]

The Appeals Council specifically stated that it adopted the ALJ's findings regarding the issues in the case and the evidentiary facts, including the testimony from Dr. George Smith and the medical source statement from Dr. David Gboloo. (AR p. 5). Based on this information, the Appeals Council adopted the ALJ's finding that the Plaintiff had an RFC for light work from the alleged onset date through November 25, 2013. (AR p. 6).[18]

### i. Evidence Supporting the RFC Determination

---

[16] Following an examination of Plaintiff on June 29, 2011, Dr. Johnson noted, *inter alia*, "normal pushing, pulling, and reaching with normal crouching, squatting, and stooping. The patient is able to climb on and off the exam table independently and is able to dress and undress himself independently." (AR p. 307).

[17] Plaintiff asserts that the regulations require the ALJ's decision to be "sufficiently specific in the weight granted medical opinion evidence so as to allow subsequent review." (Rec. Doc. 8, p. 12). The court finds the ALJ's discussion of the weight assigned each medical opinion to be sufficient.

[18] As noted above, the Appeals Council determined that Plaintiff was disabled as of November 25, 2013 – the date Plaintiff changed age categories from "closely approaching advanced age" to "advanced age." The Appeals Council adopted the ALJ's determination that Plaintiff had the RFC to perform light work through the date he changed age categories and that on that date Plaintiff was disabled by direct application of Medical-Vocational Rule 202.06. (AR p. 6). Accordingly, the ALJ's determination that Plaintiff's RFC changed from the full range of light work to sedentary work with restrictions on March 11, 2014 (i.e., <u>after</u> Plaintiff became disabled based on Rule 202.06) is irrelevant to the Appeal Council's final determination.

To the extent Plaintiff asserts that the ALJ lacked substantial evidence to support a finding that Plaintiff had a RFC to perform the full range of light work prior to March 11, 2014, the record as a whole shows that this claim of error is not supported by the record or the applicable law.

Dr. Levie Johnson performed a consultative examination of Plaintiff on June 29, 2011. Dr. Johnson acknowledged Plaintiff's diabetes, Hepatitis B and C, arthritis, and cardiac disease. Nevertheless, he recorded many normal objective functional findings during his physical examination of the Plaintiff including: (1) a normal gait, station and heel-to-toe walk, and the lack of a need for an assistive device to ambulate; (2) normal range of motion in his back without tenderness or swelling and normal range of motion and strength in all extremities without joint tenderness or swelling; (3) normal gripping, pinching, grasping, handling, and fingering bilaterally; (5) normal reflexes, intact sensation, and no neurological, motor, or sensory deficits in his extremities; and (6) normal pushing, pulling, reaching, crouching, squatting, and stooping; and (7) Plaintiff's ability to climb on and off the exam table and dress and undress himself independently. (AR pp. 304-309).

At the initial level of administrative review, the state agency medical consultant Dr. Joseph Michalik reviewed the medical records and provided a residual functional capacity assessment on October 7, 2013. (AR pp. 49-51). Dr. Michalik's findings supported the conclusion that the Plaintiff could perform the exertional requirements of light work. Specifically, Dr. Michalik found that the Plaintiff was limited to (1) occasionally lifting and carrying 20 pounds and 10 pounds frequently; (2) sitting for 6 hours in an 8 hour workday; (3) standing/walking for 6 hours in an 8 hour work day with unlimited pushing and pulling other than lifting and carrying; (4) occasionally climbing stairs or ramps; and (5) frequently performing postural activities such as

10

balancing, stooping, kneeling, crouching and crawling. (AR pp. 49-50).

State agency medical expert, Dr. George Smith, testified that he reviewed the evidence and found that Plaintiff's records showed Plaintiff was "remarkably free from an apparent diabetic complication." (AR p. 35). Although Dr. Smith testified that Plaintiff's diabetic neuropathy could affect his ability to ambulate, he also opined that Plaintiff did not have impairments that would limit or prevent him from working. (AR pp. 36-37). Moreover, medical records from examinations conducted by Dr. Robert Muhumuza from February 2013 through September 2013 showed objective findings of normal cardiovascular functions, normal motor strength and tone, normal gait and station, grossly intact sensation, and normal movement of all extremities. (AR pp. 367-390).

The evidence above, considered as a whole, is substantial evidence to support the ALJ's and Appeals Council's RFC determination.

### ii. Evidence Contrary to the RFC Determination

Plaintiff argues that the Appeals Council, through its adoption of the ALJ's assessment, improperly rejected the medical evidence existing prior to Plaintiff's alleged onset date which demonstrated his inability to engage in work above a sedentary exertional level. (Rec. Doc. 8, p. 7). Plaintiff fails to provide any legal authority to show why symptoms existing prior to his alleged onset date should be given more weight than those present during his period of alleged disability.

Plaintiff cites medical records from his treating physician, Dr. Twum, showing that he suffered from neuropathy associated with diabetes, an episode of dizziness, short term memory problems, heart palpitations, uncontrolled insulin-dependent diabetes mellitus, lower back pain,

11

and claudication prior to his alleged onset date. (Rec. Doc. 8, p. 7). The fact that Plaintiff can cite some evidence in the record which supports his position does not negate the existence of substantial evidence to support the ALJ's finding. *See Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988) ("As we explained above, we have no power to determine if the record contains substantial evidence to support [claimant's] claim; instead, we are confined to questioning only whether substantial evidence supports the Secretary's judgment."). Moreover, the mere presence of Plaintiff's diabetes and Hepatitis B and C does not establish a functional impairment which would prevent him from engaging in substantial gainful activity. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cit. 1983). With respect to Plaintiff's symptoms of dizziness, heart palpitations, and memory loss, the record fails to establish that these findings were objective, consistent, and/or unresolved to an extent that could affect his RFC. Further, these findings are contradicted by the substantial evidence contained in the medical records referenced above.[19] Thus, the record fails to establish the ALJ committed a legal error in her evaluation and weight given to Dr. Twum's medical findings prior to the alleged onset date.

### iii. Weight Given to Dr. Gboloo's Evaluation

Plaintiff complains that while the ALJ used the date of Dr. Gboloo's assessment as the "onset" date of Plaintiff's disability, the ALJ improperly used only portions of Dr. Gboloo's assessment[20] in determining Plaintiff's RFC and should not have rejected Dr. Gboloo's opinion

---

19 In Dr. Johnson's examination, Plaintiff was reported to have a regular heart rhythm and rate; normal range of motion in his back and upper and lower extremities; and normal hand and arm grip strength. (AR p. 306). Dr. Johnson also reported that the Plaintiff was alert and oriented and his long term and short term memory were normal. (AR. p. 305). Similarly, the medical records of Dr. Muhumuza show that Plaintiff exhibited normal memory, normal cardiovascular functions, normal motor strength and tone, and normal gait and station. (AR pp. 369, 373, 376).

20 To the extent Plaintiff asserts that the ALJ rejected the specific limitations described in Dr. Gboloo's assessment, the court notes that the ALJ's RFC for March 11, 2014 forward specifically incorporated functional limitations

12

that Plaintiff's limitations existed as of December 31, 2010. (Rec. Doc. 8, p. 8).

In his memorandum in support of appeal, Plaintiff characterizes Dr. Gboloo's March 11, 2014 assessment as a "treating source opinion." (Rec. Doc. 8, pp. 11 & 13). Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician). However, ALJ may reject the treating source's opinion when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'" *Walker v. Barnhart*, 158 Fed. Appx. 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458). The regulations state that an ALJ should consider certain factors when deciding how much weight to give a medical opinion (length of treatment, consistency of the opinion with the record as a whole, the physician's specialization, and other factors). 20 CFR § 404.1527(c) & (d). However, if the ALJ's decision is supported by substantial, contradictory, first-hand evidence from another physician, the ALJ is "not required to go through all six steps in *Newton* [because] . . . the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain v. Barnhart*, 193 Fed. Appx. 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 Fed. Appx. at 534)). Further, "the ALJ may give 'less weight, little weight, or even no weight' to the opinion of a treating physician upon a showing of good cause." *Ray v. Barnhart*, 163 Fed. Appx. 308, 313 (5th Cir. 2006) (quoting *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir.

---

mirroring those set out by Dr. Gboloo. (AR pp. 657-659 & AR pp. 21-22).

13

2001)).

Under the regulations, a "treating source" is defined as a medical source that has or has had "an ongoing treatment relationship" such that the medical evidence shows that Plaintiff sees or has seen "the source with a frequency consistent with accepted medical practice for the type of treatment." 20 CFR § 404.1502. Opinions from treating sources are generally given more weight "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of Plaintiff's impairments. 20 CFR § 404.1527(c)(2). Where no such longitudinal pattern of care is shown, the Fifth Circuit has held that an ALJ is not required to give that professional's opinion greater weight. *See Clayborne v. Astrue*, 260 Fed. Appx. 735, 737 (5th Cir. 2008) (doctor properly rejected as treating source where "isolated visits" did not amount to an "ongoing treatment relationship" with doctor); *Hernandez v. Heckler,* 704 F.2d 857, 860–61 (5th Cir.1983) (doctor who only saw claimant twice in a 17–month period was not a treating physician); *Taylor v. Astrue,* 245 F. Appx. 387, 391 (5th Cir.2007) ("[N]othing about Taylor's relationship with Dr. Weisberg establishes the 'longitudinal' pattern of care described in [the regulations]; Taylor's two visits to Dr. Weisberg, four years apart, are the sort of "individual examinations" that are distinguished ... from the continuous care provided by a treating physician."). Here, while the medical records establish Plaintiff's ongoing treatment relationship with Dr. Twum, there are no records indicating such a relationship with Dr. Gboloo – the medical professional who actually completed the March 11, 2014 evaluation.[21] Moreover, there is no

---

21 Plaintiff asserts that Dr. Twum "treated plaintiff from at least September of 2008 through February of 2014" and explains that "Dr. Twum's practice associate, Dr. David Gboloo, completed the form entitled 'Physician's Evaluation of Ability to Function' on March 11, 2014." (Rec. Doc. 8, p. 7). Although Dr. Gboloo's status as Dr. Twum's practice associate could potentially provide the basis for consideration of his opinion as a treating source, there is nothing in the record to indicate that Dr. Gboloo examined Plaintiff even once. *Compare*, *Lawson v. Colvin*, 21 F.Supp. 3d 606, 612 (W.D. Va. 2014) (finding doctor in same practice group that had been treating plaintiff for years

14

evidence to indicate what information Dr. Gboloo's assessment was based on, whether Dr. Gboloo physically examined Plaintiff prior to his assessment, or whether the assessment was completed in conjunction with any discussions with Dr. Twum. Accordingly, it is not necessarily clear that Dr. Gboloo meets the definition of a treating physician.

In any event, Plaintiff's argument that the record does not contain sufficient competing first-hand medical evidence contrary to Dr. Gboloo's assessment is without merit in light of the objective findings of Dr. Johnson discussed above. Thus, the ALJ was not required to evaluate Dr. Gboloo's findings using all the factors in the regulations. A review of the record as a whole demonstrates the ALJ applied the proper legal standards in assessing Dr. Gboloo's report.

The ALJ also adequately explained her review of Dr. Gboloo's findings. It is clear from the ALJ's analysis that she chose not to credit all aspects of Dr. Gboloo's report.[22] The ALJ clearly enumerated in her ruling that she assigned less weight to Dr. Gboloo's statement that Plaintiff's limitations were present as of December 2010 because this conclusion was not supported by the substantial evidence in the record, including but not limited to Dr. Johnson's consultative medical examination in June 2011 and the testimony of Dr. Smith at the hearing. (AR p. 22). The ALJ further acknowledged that although Plaintiff had a history of significant medical conditions, either untreated or poorly controlled in some cases, his objective examinations were generally benign. (AR p. 21). These statements demonstrate that the ALJ provided a sufficient explanation for her decision under the proper legal standards.

---

and who had examined plaintiff on "at least one occasion prior to completing his report" to be a treating physician under the regulations).

[22] The role of the ALJ is to consider and weigh the evidence as a whole and resolve conflicts in the evidence. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir.1991); *HALJ v. Barnhart*, 31 Fed.Appx. 839 (5th Cir.2002).

#### iv. Plaintiff's Credibility

Plaintiff also asserted that that the ALJ's RFC analysis and finding cannot be upheld because it is based on an unsupported assessment of his credibility. This argument is undeveloped and without merit. Under the regulations and applicable legal standards, the ALJ must consider a claimant's subjective complaints, but may find that those complaints are not credible or are exaggerated. The ALJ is not required to give subjective evidence precedence over objective evidence. 20 C.F.R. §§ 404.1529 and 416.929; 20 C.F.R. §§ 404.1527 and 416.927; Social Security Ruling 96-7p;[23] *Anthony v. Sullivan,* 954 F.2d 289, 295-96 (5th Cir. 1992); *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

Review of the ALJ's decision and the record as a whole demonstrates that the ALJ cited and properly applied the applicable legal standards in evaluating Plaintiff's credibility, and that her conclusion was supported by substantial evidence. In her decision, the ALJ cited the governing regulations and correctly applied them by examining Plaintiff's subjective complaints in light of the medical records, his daily activities, and the medical source statements contained in the record. (AR pp. 21-22). The ALJ did not wholly reject Plaintiff's allegations of pain and limitations. Rather, she credited them, but only to the extent she found his complaints consistent with the objective evidence. This finding is supported by substantial evidence - the same evidence cited above in the analysis of the ALJ's RFC determination.

### VI.   Conclusion

---

[23] TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, SSR 96-7p, 1996 WL 374186.

16

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit. The record considered as a whole supports the finding that the Appeals Council applied the proper legal standards and substantial evidence supports the determination that as of the date last insured, Plaintiff was not disabled.

## RECOMMENDATION

It is the recommendation of the magistrate judge that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security Carolyn W. Colvin, denying the applications for disability insurance benefits filed by plaintiff Leon John Williams, be affirmed and this action be dismissed.

Signed in Baton Rouge, Louisiana, on March 4, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**